Gibbs, special J.
delivered the opinion of the court.
In this case it appears from the pleadings and evidence, that Joseph Lea of Chatham county, North Carolina, on the 25th August, 1804, executed his last will and testament, which was proven and registered in said county, in February 1805, and that James Taylor, Joseph Lea and John Leahis sons, were appointed executors. The said will among other things provides as follows:
“I lend to my wife Mary during her life, all my property not specially bequeathed, consisting of six negroes, viz: Ben, Jim, Bob, Fillis, Ursula, and Juno, together with my stock of horses, cattle, sheep and hogs, also, my farming utensils of every kind with all my household and kitchen furniture not before disposed of, and at her death, my will is, that so much of said property should be sold as shall amount' to three hundred and fifty dollars, and the remainder of every kind, and the increase *120 be divided between my son Joseph, and my daughter Anti, and my sons John and Woodson, and the heirs &c.”
At some period between 1816, and 1814, the complainant Ann intermarried with Thomas B. Smith, in Chatham county, in the state of North Carolina;, said Smith being a citizen of Mechlenburgh county in said State. Upon the 22d January, 1814, a deed purporting to be a marriage settlement was executed, signed by the said husband of the one part; and the said Joseph Lea, the executor, and Robert Smith the brother of said Thomas, were the other parties, and by said deed were constituted trustees, to hold said property mentioned in said deed for the use and benefit of the complainant, for and during the joint lives of her and her husband, remainder tobe conveyed to the children of said Ann. This deed recites that it was executed in performance of an agreement before marriage — that all the property of Ann derived, or what might be derived under the will of her father should be so settled, and that said trustees, should pay over the hire of said slaves to said husband and wife, or allow them to take their labour.
In July 1833, the defendant Thomas J. Greer recovered two judgments in the county court of Shelby, State of Tennessee, amounting to about two hundred and twenty dollars, which judgments were affirmed in the circuit court of Shelby, and executions issued, and the negro Ursula seized by the sheriff, as the property of said Thomas B. Smith, upon which the complainant filed her bill, and obtained an injunction. The cause was tried upon the bill, answers, replication, and proof in the chancery court. A decree was made in favour of complainants, the injunction made perpetual, and an appeal to this court. The counsel for the defendant has submitted two propositions upon which they insist the decree of the court below should be reversed. 1st, that the deed of settlement is not proven and registered in the proper county. 2nd, if proven and registered in the proper county, yet it cannot be set up as a conveyance for valuable consideration, so as to prevent creditors from seizing the property in satisfaction of their debts. As to the first question, the court are satisfied that the registration was proper. The act 1788,- sec. 1, requires marriage settlements to be pro *121 ven in the same manner as other deeds, and registered in the proper county. The proper county by former acts is the county where the property was at the date of the conveyance. This negro Ursula, it appears from the will, was one of the negroes belonging to the father of complainant, and embraced in the claim before'referred to, and was deeded to the mother of complainant for life, who resided in Chatham county. The possession, by law, first vested in the executors who also resided in that county; and there is no proof that said negro was removed from that county, until after the execution of that deed. The second position assumed by the defendant’s counsel will be considered, first, as to its validity as a settlement for valuable'consideration — and secondly, as to its validity as a voluntary settlement. A deed of marriage settlement cannot be sustained, as founded upon a marriage contract by parol, made in view of an intended marriage, if such deed were executed after the marriage had taken effect, althoughthe deed recites such previous contract; nor could the court give effect to proof of such contract unless in writing, without disregarding the injunctions of the statute of frauds and perjuries — and also the settled determinations of the courts in the cases of Cains and wife vs. Marley, 2 Yerg. 582, and Patton vs. McClure, M. & Yerg. 333, which we think were correctly adjudged. The question then arises, can the deed be sustained against the present defendants as a post-nuptial settlement, and, therefore, a voluntary conveyance for the benefit of the complainant and her children. The husband may after marriage settle his own property upon his wife by the intervention of a trustee, if not indebted at the time of making the settlement. The statute of 13th Elizabeth, does not declare voluntary settlements void against creditors, but merely declares that a fraudulent deed shall be void against them. If a man be indebted at the time of making a voluntary deed of settlement, it does not follow that it is void for that reason alone; it is only a presumption of fraud. See Lenham vs. Mullins, 1 Atk. 15: Holloway vs. Millard, 1 Maddox, Ch. Rep. 414. To invalidate a post-nuptial settlement, the husband must not only be indebted, but he must be indebted at the time to an amount sufficient to have the effects of delaying and *122 defeating creditors. 3 Kent, 81: Beaumont vs. Tharp, 1 Ves. Sr. In the case of Lusk vs. Wilkinson, reported in 5th Yes., the husband at the time of making the settlement was indebted in two sums secured by mortgage and <£100 besides. This settlement was attempted to be impeached by a subsequent creditor, upon the ground of its being voluntary, and, therefore, void against creditors. The bill charged that he was indebted to several persons and insolvent. Lord Alvanly decided, “that in order for a subsequent creditor to obtain a reference for en-quiry into prior debts, for the purpose of invalidating a voluntary settlement, proof should be made of an antecedent debt,*” and he further observed, in Stephens vs. Allen, that Lord Kenyon seemed to think that without an antecedent debt proved, there was no such right, and the creditor’s bill was dismissed. From these adjudications it is manifest that any post-nuptual settlement out of the husband’s estate, upon the wife is not void, against subsequent creditors; but only such as was made, when the husband was indebted at the time to a considerable amount, so as to raise the presumption of fraud; and, in as much as the subsequent creditor can. only effect a voluntary settlement through the medium of debts owing by the debtor at the time said deed was made, it becomes indispensible to show the existence of prior debts, at the date of the settlement, to enable the subsequent creditor to invalidate the deed.
This leads to the important enquiiy in this case, has the defendant proved the’ existence of one prior debt, at the date of this deed. This court thinks the defendant has failed upon this part of the case. He has, it is true, taken the depositions of two witnesses in North Carolina, in the neighborhood where the husband of the complainant lived, from 1810, perhaps, up to 1828; they sa,y that their understanding was, that he was embarrassed, and that he would have been unable to pay his debts without the use of part or all of the property embraced in the deed of settlement. They specify no particular debt, no particular amount, no particular person to whom owing. In the answer no particular indebtedness is charged; all is left to rest upon uncertainty and hearsay. If a debt or debts had been specified, then the complainant might have shown, perhaps, *123 that such débt had been secured by mortgage, as in the case of Holloway vs. Millard, 1 Mad. Rep. 418, and a case in 2n Ch. Ca. 90, referred to in 30 vol. Law Lib. 191: or he might have shown that the debts had been discharged before the making of the deed. The necessity of specific proof of some particular debt is increased from the circumstance of the great length of time that the husband lived in the county of Meclenburg, without any complaint, or suit by any of these ancient creditors, (some fifteen or twenty years) and as to the debt, the only one of which the court are furnished with any specified information, some twenty years elapsed after the making of the settlement, before it seems to have had an existence. But there is another important consideration, which places the validity of this settlement beyond the reach of this defendant’s judgment, and distinguishes this case from the ordinary cases of marriage settlements, executed after the marriage has taken place, and it is this, the property never was the property of the husband, because it never came to his possession, so as to enable him to convey any legal title to any body, or to render it subject to his debts. By the will, the possession of the negro passed to the executors, and by their assent, (if it was ever given,) to Mary Lea, who had an estate for life. Consequently, in 1814, when this deed was executed, the said Thomas B. Smith in right of his wife, had no interest except a reversionary interest consequent upon his surviving Mary Lea, an event which had not happened inl814, and for aught the court can know, fromtheevidenceinthe cause, has notyet happened. The property being in this situation, a family arrangement seems to have been entered into that resulted in the execution of this deed. That the mother gave up her estate for fife, is to be inferred from the fact of the possession according to the settlement, having been delivered and continued ever since. The assent of the executor, Joseph Lea, is satisfactorily proven by his having received and proved the deed, being a party thereto; and from the fact of his giving up his undivided interest to satisfy the provisions of the deed of settlement. And the said Thomas B. Smith relinquished the contingent interest that might by probability vest in him in the legacy of his wife in futuro, as proved by the execution of said *124 deed. This arrangement was. both legal and equitable, and no one would have a right to complain of it, unless it should be the wife. The settlement of the wife’s estate upon her accords with the spirit of the provisions of the act of assembly, N. C.1785, and it is precisely what a court of chancery would have done if brought before it in any shape, and more particularly if the husband had been embarrassed- in his circumstances. And this is the uniform decision and practice of the court, in cases where the husband has a present interest in a legacy in right of his wife. But in such cases as the present, where the interest is in future and contingent as to the husband, a court of equity would not permit the wife to consent in court to a transfer of her right by survivorship'to her reversionary interest. In the case of Pickard vs. Roberts, 12 Vez. 174, where the wife being entitled to a sum of money upon the death of her mother to whom the interest was payable during life, the mother, the daughter, and the husband petitioned the court that the rever-sionary interest to which the wife would be entitled upon the death of her mother, might be paid to her husband, the mother having made a gift of her life interest to him. But the vice-chancellor refused the prayer of the petition, saying that his opinion was, that a wife by her consent could not part with that interest, which is the creature of a court of equity, the right which she has in a court of equity to claim a portion by way of settlement on herself and children out of that property which the husband, at law, would taire in her right. That if the wife by her consent in court, could pass a remainder or reversion in personal property to the husband, she would not only part with a future possible equity but with the chance of possessing the whole property by surviving her husban d. The wife cannot transfer a reversionary interest by deed so as to bar her right of survivorship. See 5 Mad. Ch. Cases 157. In the case of Hously vs. Lea et al, 2 Mad. C. C. 16, Sir Thomas Plumer adjudged that a deed made by husband and wife, for valuable consideration, of a reversionary 'interest in stock, did not bar the right of the wife to the fund by survivorship, and he says in delivering his opinion, that the husband has a right to his wife’s choses in action, provided he reduces them to possession in his lifetime. *125 That a deed assigning a reversionary interest is not an actual reduction to possession, because it is impossible to reduce a re-versionary interesttó possession. In the case of Perdew vs. Jackson, 1 Russel’s Ch. Cases 1, before the same judge, the correctness of the case of Hously vs. Lea, was questioned, and the principle reviewed with great care, when he reaffirmed the decision, and his honor asks this unanswerable question in der livering his opinion: Can the husband bar the right of the wife by survivorship by an act which is not a reduction into possession, and that too at a time when it is impossible, from the re-versionary nature of the chose in action that it should be reduced into possession?
These cases demonstrate that the possession never was and never could have been in Smith, the husband, and therefore a judgment creditor never could reach it by execution, and the marriage settlement, although post-nuptial, would not be disturbed except in favor of the wife after the death of her husband, which it is admitted, has taken place, and after the death of Mary Lea who had the life estate, upon her own application.
Let the decree be affirmed.